UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SYNVASIVE CORPORATION,

       Plaintiff,

  v.

STRYKER CORPORATION,

       Defendant.

STRYKER CORPORATION,

       Counterclaimant,

  v.

SYNVASIVE CORPORATION,

       Counterdefendant.

NO. CIV. S-05-1515 WBS DAD

MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY JUDGMENT

----oo0oo----

       Currently before the court is defendant Stryker Corporation's motion for summary judgment of noninfringement of two patents held by plaintiff Synvasive Corporation, with attendant issues of claim construction.

I.   Factual and Procedural Background

       Plaintiff Synvasive is the assignee of U.S. Patents 6,022,353 ("the '353 patent") and 6,503,253 ("the '253 patent"),

1

both of which claim surgical saw blades and related methods of using surgical saw blades, and are based on a patent application filed with the Patent and Trademark Office ("PTO") on May 30, 1991. (Pl.'s Opp'n to Mot. for Summ. J. 1, 4.)  The '253 patent is a continuation of the '353 patent; thus, although the claims in the two patents differ, they share a common specification. (Id. at 4.)  The '353 patent issued on February 8, 2000; the '253 patent issued on January 7, 2003. (Compl. ¶¶ 5,7.)  Plaintiff alleges that defendant's products infringe Claims 1, 3, 5, 7, 9, and 11 of the '353 patent, and Claims 1, 2, 4, 6, 8, 10, 12, and 14-18 of the '253 patent.[1]  (Def.'s Mot. for Summ. J. Ex. D (Pl.'s Am. Resp. to Def.'s Interrog. No. 2); see also Pl.'s Opp'n to Mot. for Summ. J. 6.)

There are three categories of products manufactured by defendant that allegedly infringe the '253 and '353 patents: (1) Stryker Parts No. 2018-102S12 and 2108-151S4 (which allegedly have curved tops); (2) Stryker's Dual-Cut blades, with "fishtail-shaped" teeth that are offset;[2] and (3) Stryker offset-teeth blades.

A figure from the '353 patent is included below; it depicts one embodiment of the patented blade.

---

[1]   Unlike the claims alleged in a complaint, "[t]he claims of the patent provide the concise formal definition of the invention.  They are the numbered paragraphs which 'particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention.'"  Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1258 (Fed. Cir. 1989) (citing 35 U.S.C. § 112).

[2]   One model of the Dual-Cut blades, Stryker Part No. 4225-147-090, does not have offset teeth.

2

Fig 4

A.    The '353 Patent

The only independent claim of the '353 patent that
plaintiff alleges defendant's products infringe is Claim 1.  All
other claims in the patent that are in dispute are dependent upon
Claim 1.  (Def.'s Mot. for Summ J. Ex. A at 6.)
Claim 1 reads in relevant part:

> 1.  A surgical saw blade for use in combination
> with a surgical bone saw, the surgical saw
> blade comprising:
> a) a proximal end configured to couple to a
> surgical bone saw;
> b) a distal end having an even number of
> substantially identically shaped teeth for
> cutting bone, each of the plurality of teeth
> ending in a tip distally; and
> c) a centrally positioned long axis between
> the proximal end and the distal end;
> wherein each of the plurality of
> substantially identically shaped teeth are
> shaped substantially as right triangles
> including a hypotenuse and an angle opposite
> the hypotenuse, wherein each hypotenuse is
> oriented toward the centrally positioned
> long axis, and wherein the tips are arrayed
> on a line perpendicular to the centrally
> positioned long axis.

(Id. ('353 patent, 6:48-63).)  Claim 3 adds the following
language: "wherein the even number of teeth [of the saw blade]

3

1 are at least eight." (Id. ('353 patent, 7:1-2).) Claim 5 covers

2 a method of using the blade that is the subject of Claim 1: "A

3 method of cutting bone comprising the steps of: a) providing a

4 surgical saw blade according to claim 1; b) coupling the saw

5 blade to a surgical saw; c) actuating the surgical saw with the

6 coupled saw blade, and d) cutting a bone." (Id. ('353 patent,

7 7:5-11).) Claim 7 refers to the method in Claim 5 and adds that

8 the even number of the teeth of the saw "are at least eight

9 teeth." (Id. ('353 patent, 7: 16-18).) Claim 9 refers to the

10 combination of the surgical bone saw and the bone saw. (Id.

11 ('353 patent, 7:22-27, 8:1-14.) Claim 11 references Claim 9 and

12 adds the same limitation of Claim 3: that there be at least eight

13 teeth on the bone saw. (Id. ('353 patent, 8:21-22).)

14        B.   The '253 Patent

15        Claims 1 and 14 of the '253 patent contain the

16 following elements: (1) a proximal end having a hub for

17 attachment to an oscillatory power tool, (2) a distal end having

18 a plurality of substantially identically shaped cutting teeth

19 (Claim 1 requires that they be an even number of teeth; Claim 14

20 does not); and (3) tips that are "configured to be placed

21 substantially on a tangent which is perpendicular to a radial

22 line extending from the center of the power tool cutting axis

23 that bisects the arc of travel within which the blade travels . .

24 . ." (Def.'s Mot. for Summ. J. Ex B ('253 patent, 8:36-42).)

25        Claim 2 is similar to Claim 1 except that it covers

26 "[a] surgical saw blade for use in combination with a surgical

27 bone saw . . . ." (Id. ('253 patent, 7:3-22).) Claim 6 covers

28 the combination of the surgical bone saw and a bone saw blade.

4

1  (Id. ('253 patent, 7:30-60).)   Claim 10 is a method claim that

2  refers to the saw blade mentioned in Claim 6.  (Id. ('253 patent,

3  9:10-11).)   Claim 4, 8, and 12 modify Claims 2, 6, and 10

4  respectively by adding the limitation of an even number of teeth.

5  (Id. ('253 patent, 8:26-27, 8:65-66, 9:14-16).)

6          Claim 15 is dependent upon Claim 14, and additionally

7  requires a centrally positioned long axis, teeth that are shaped

8  substantially as right triangles, and teeth with hypotenuses that

9  are "oriented at least one of towards and away from the axis."

10  (Id. ('253 patent, 8:36-42).)   Claim 16 modifies Claim 15 by

11  requiring that the number of teeth be even.  (Id. ('253 patent,

12  8:43-45).)   Claim 17 modifies that further by requiring that all

13  teeth have a hypotenuse oriented towards the central long axis.

14  (Id. ('253 patent, 8:46-47).)   Claim 18 narrows further to

15  require six identical cutting teeth on each side of the central

16  axis.  (Id. ('253 patent, 8:48-49).)

17          At a status conference on October 24, 2005, the court

18  concluded that rather than hold a separate hearing to construe

19  the claims of these patents, it would be more effective to

20  resolve the claim construction issues in the context of a motion

21  for summary judgment.  (Oct. 24, 2005 Status Order.)   Defendant

22  filed this motion for summary judgment of non-infringement on

23  January 20, 2006.

24  II.  Discussion

25     A. Legal Standard

26          Summary judgment is proper "if the pleadings,

27  depositions, answers to interrogatories, and admissions on file,

28  together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id.

        Once the moving party meets its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading."  Fed. R. Civ. P. 56(e).  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

        The substantive law governing a case determines the materiality of a fact.  T.W. Elec. Serv., Inc. v. P. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  "A

6

determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 905-06 (Fed. Cir. 2005) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)); see also Markman v. Westview Instruments, Inc., 517 U.S. 370, 374 (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process,' which in turn necessitates a determination of 'what the words in the claim mean.'"). "To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." Rohm & Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed. Cir. 1997) (citations omitted).

Generally, courts look to three sources for claim construction: the claims, the specification, and the prosecution history. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). The ordinary meaning of terms is sometimes elucidated by common-sense interpretation by judges or use of "general-purpose" dictionaries. Phillips v. AWH Corp., 415 F.3d 303, 1314 (Fed. Cir. 2005) (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (construing claims without "elaborate interpretation")). Patentees, however, may serve as their own lexicographers when they clearly define terms in a manner different from their generally understood meaning. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999).

Additionally, courts may turn to extrinsic evidence

7

1  concerning "relevant scientific principles, the meaning of
2  technical terms, and the state of the art."  Innova/Pure Water,
3  Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116
4  (Fed. Cir. 2004).  Expert testimony may assist the court in
5  construing claims by providing background about the technology at
6  issue, "to explain how an invention works," to conform the
7  court's interpretation of the technology to that of a person with
8  ordinary skill in the art, or to establish that a term has a
9  singular meaning in the relevant technological field.  Phillips,
10  415 F.3d at 1318 (citing Pitney Bowes, Inc. v. Hewlett-Packard
11  Co., 182 F.3d 1298, 1308-09 (Fed. Cir. 1999); Key Pharms. v.
12  Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998)).
13  However, evidence extrinsic to the patent is considered less
14  reliable for the purposes of claim construction than the
15  information contained in the patent itself.  Id.  Additionally,
16  "conclusory, unsupported assertions by experts as to the
17  definition of a claim term are not useful to a court."  Id.
18    B. Claim Construction

19      Because the '253 patent is a continuation of the '353
20  patent, and their specifications are almost identical, the court
21  will interpret shared terms in a consistent manner.  See Arthur
22  A. Collins, Inc. v. N. Telecom Ltd., 216 F.3d 1042, 1044 (Fed.
23  Cir. 2000) (affirming noninfringement on summary judgment when a
24  district court interpreted terms shared by two patents because
25  "[b]oth patents share[d] the same written description, and one
26  patent [was] a continuation of the [other] patent").  Defendant
27  contends that the following features of various surgical saws it
28  produces prevent the saws from infringing the claims of the

8

patents at issue: (1) curved tops, (2) offset teeth, and (3) fishtail-shaped cutting surfaces.  Accordingly, the terms of the claims to be construed that are common to both patents are:

- Tooth
- A tip
- Shaped substantially as right triangles
- Hypotenuse

With regard to the '353 patent, claim construction is necessary for the following terms:

- A line
- Arrayed on a line
- Each hypotenuse is oriented toward

The terms of the claims to be construed from the '253 patent are:

- A tangent
- Configured to be placed substantially on a tangent
- Each hypotenuse is oriented at least one of towards and away from

1.  <u>Terms Common To The '253 & '353 Patents</u>

a. "<u>Tooth</u>"

The parties do not dispute that a "tooth" is the cutting surface of a blade.  (Pl.'s Opp'n to Mot. for Summ. J. 22; Def.'s Mot. for Summ. J. 14.)  Some claims of the patents also describe the teeth as "shaped substantially as right triangles," but the court construes that term separately below.  Defendant contends, however, that the specification indicates that all claims refer to teeth that are triangular because of three embodiments disclosed in the patents.  ('353 Patent, 3:1-2; '253 patent, 3:3-4.)  Defendant similarly notes that both patents

1   also describe, in their description of preferred embodiments,

2   teeth as being "formed from two sides, which coalesce to form the

3   tooth." ('353 patent, 4:53-54; '253 patent, 4:55-56.)

4           The court cannot read a limitation into a claim from

5   the embodiments in the specification.  <u>Laitram Corp. v. Cambridge</u>

6   <u>Wire Cloth Co.</u>, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References

7   to a preferred embodiment, such as those often present in a

8   specification, are not claim limitations" (citation omitted).)

9   Therefore, the court concludes that it is sufficient to say that

10  a "tooth" is a cutting surface.

11          b. "<u>A Tip</u>"

12          There is no dispute that the term "a tip" is distinct

13  from the term "tooth," and that it refers to the top, or distal

14  end, of the tooth. (Def.'s Mot. for Summ. J. 14; Pl.'s Opp'n to

15  Mot. for Summ. J. 24.)  The Federal Circuit has explained that

16  the indefinite article "a" is  amenable to two different

17  meanings: it can mean "one" or "one or more." <u>KCJ Corp. v.</u>

18  <u>Kinetic Concepts, Inc.</u>, 223 F.3d 1351, 1355 (Fed. Cir. 2000).

19  Moreover, the default is to presume that the article "a" refers

20  to "one or more." <u>Id.</u> ("Unless the claim is specific as to the

21  number of elements, the article 'a' receives a singular

22  interpretation only in <u>rare</u> <u>circumstances</u> when the patentee

23  evinces a clear intent to so limit the article" (emphasis

24  added).)

25          Defendant argues that because the term "tip" is defined

26  as "the area of coalescence" where the sides of the tooth come

27  together, the term "a tip" should be construed to mean a single

28  tip.  However, an <u>area</u> of coalescence does not clearly denote one

1   single tip.[3]  This evidence is insufficient to demonstrate the

2   patentee's clear intent to limit the article "a" to its singular

3   form.  Therefore, the court concludes that the term "a tip"

4   refers to one or more tips at the distal end of a tooth.

5                    c. "Shaped Substantially As Right Triangles"

6               The definition of this claim element appears to be

7   undisputed.  Defendant proffers the following construction:

8   "shaped as a triangle in which one of the interior angles is

9   substantially ninety degrees."  (Def.'s Mot. for Summ. J. Ex. H

10  (Webster's Third New International Dictionary 1956 (4th ed.

11  1976)).)  Plaintiff does not appear to dispute this construction.

12  The use of the term "substantially" suggests that the objects in

13  question are "approximately" right triangles.  See Anchor Wall

14  Sys. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1311-12

15  (Fed. Cir. 2003) (noting that "words of approximation, such as

16  'generally' and 'substantially,' are descriptive terms commonly

17  used in patent claims to avoid a strict numerical boundary to the

18  specified parameter" (internal quotations omitted; citations

19  omitted)).  Therefore, the court concludes that the claim

20  language "shaped substantially as a right triangle" should be

21  construed as follows: "shaped as a triangle in which one of the

22  interior angles is approximately ninety degrees."

23  ///

24  ///

25  _____

26      [3]     For instance, a mountaintop might be considered an
    "area of coalescence," but many mountaintops consist of a few
27  distinct peaks.  Similarly, an area of coalescence could
    encompass more than one distinct tip, and therefore, this phrase
28  does not clearly establish the patentee's intent to restrict the
    patent to cover only teeth with a single tip.

d. "Hypotenuse"

The meaning of the term "hypotenuse" is not disputed. Accordingly, the court concludes that "hypotenuse" means "the edge of a triangular cutting surface tooth opposite the interior angle of the triangle that is closest to ninety degrees."

e. "Each Hypotenuse Is Oriented Toward"

This phrase has a clear ordinary meaning: each tooth should have a hypotenuse that is oriented toward the central long axis, or facing that axis.

2. Terms From The '253 Patent

a. "A Line"

Defendant seeks to construe the phrase "a line" with the standard geometric definition: a series of points defined by the intersection of two planes. Plaintiff asks the court to construe the entire phrase "arrayed on a line," and proposes this definition: a mark that is long relative to its width. (Pl.'s Opp'n 12 (citing Hulse Decl. Ex. D (dictionary definition).)[4] Plaintiff's definition is plainly over-inclusive. Although a line is a mark that is long relative to its width, other objects that are not lines are also included in that definition. For instance, defendant notes that a rectangle is a mark that is long

_____

[4]    Plaintiff refers to the declaration of Matthew G. Fisher to assist in the construction of this claim; plaintiff also cites this declaration and other expert declarations with regard to other claim terms for the conclusory statements that the definitions provided by plaintiffs are correctly applied to the claim terms.  Although dictionary definitions may assist the court in claim construction, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."  Phillips, 415 F.3d at 1318.

12

relative to its width.[5]   Because this is an instance in which the ordinary meaning of the term is amenable to common-sense interpretation by judges, <u>Phillips</u>, 415 F.3d at 1314, this court will apply defendant's definition: a line is the intersection of two planes.

The term "a" is susceptible to the meaning of "one or more" lines, as discussed above.  However, the patents at issue clearly evince an intent to restrict the meaning to blade with a flat top, in which the tips would necessarily be aligned along a single straight line.  In the specification, both patents distinguish the invention from "prior art cutting blades having <u>curved</u> cutting heads."  ('353 Patent, 2:49-50; '253 Patent, 2:51-52.)  Because curved lines would also impermissibly encompass the prior art, the definition of "a line" cannot include curved lines.  Moreover, plaintiff concedes that its claims cover blades with a flat top.  (Pl.'s Opp'n to Mot. for Summ. J. 10.)  Accordingly, the court further construes the term "a line" to mean "a single straight line that is the intersection of two planes."

b.   "<u>Arrayed On A Line</u>"

Defendant proposes that the court construe the term "arrayed on a line" as "positioned on a single line."  As the court has construed the term "a line" above, the only term left

---

[5]   Defining "a line" as "a mark that is long relative to its width" could make it possible for plaintiff to claim that a blade with a curved or offset top infringes its invention—if the line is thick enough, one can imagine an infinite number of configurations of teeth made possible by placing the tips of the teeth at various points <u>within</u> the "line."

to be construed is "arrayed."  There is nothing to suggest that "arrayed" has a meaning other than its ordinary meaning, and the court therefore adopts the proposed construction of "positioned on a single line."

        c. "A Tangent"

      The parties do not dispute that a tangent is simply a line. (Def.'s Reply 3; Pl.'s Opp'n 16.)  Therefore, the court's previous construction of a line will also apply to the construction of the term "a tangent."

        d. "Configured to Be Placed Substantially on a Tangent"

      Plaintiff explains that both "arrayed on a line" and "configured to be placed substantially on a tangent" should be construed to mean a blade having a flat-top configuration. (Pl.'s Opp'n 17.)  The parties appear to be in agreement about this construction (Def.'s Reply 4), so the court will accept this construction of the terms.

        e. "Each Hypotenuse is Oriented at Least One of Towards or Away From"

      The '253 patent includes claim language stating as follows: "each hypotenuse is oriented at least one of towards and away from the centrally positioned long axis."  ('253 patent, 7:15-18, 44-46.)[6]  Plaintiff contends that the court should construe this claim as follows "each hypotenuse may face either toward or away from the centrally positioned axis." (Pl.'s Opp'n

---

    [6]   The words "at least one of" are not here construed; plaintiff conceded at oral argument that this phrase is superfluous.

30.)[7]

Plaintiff's proposed construction would prevent the claim language from limiting or modifying the claims in any way, and would therefore render the language unnecessary.  Plaintiff discusses the orientation of the hypotenuse as being either towards or away from the center line, but discusses no other possible orientation for hypotenuses.  (Pl.'s Opp'n to Mot. for Summ. J. 33.)  A limitation within a claim should not be construed in a manner that would cause it to be "meaninglessly empty."  See Ethicon End-Surgery v. U.S. Surgical Corp., 93 F.3d 1572, 1578 (Fed. Cir. 1996).  Because there are only two possible orientations for each hypotenuse, plaintiff's proposed claim construction that each individual hypotenuse may face either toward or away from the centrally positioned axis, without regard to the positions of the other hypotenuses, does not limit the claim in any way.  Such a statement would be true of the bone saw claimed by the patent even if that claim language had been omitted.  Furthermore, the term "each" means "all considered one by one," according to Webster's Third New International Dictionary 713 (4th ed. 1976).  Therefore, the court construes the phrase "each hypotenuse is oriented at least one of towards and away from the centrally positioned long axis" to mean "either all of the individual hypotenuses are oriented towards the centrally positioned long axis, or all of the individual hypotenuses are oriented away from the centrally positioned long

_____

[7]    The figure located on page 16 depicts the orientations of the hypotenuses of the teeth of two embodiments of the patents-in-suit and of the allegedly infringing product.

axis."[8]



C. Literal Infringement

          As noted, defendant contends that there are three categories of its products that do not infringe plaintiff's patents: (1) Stryker blades with curved tops, (2) Stryker Dual-Cut blades, and (3) Stryker offset-teeth blades.

          1. Curved Top Blades

          As discussed supra, both patents cover blades with flat

---

    [8]   Plaintiff argues that under this proposed definition, the dependent claims would become superfluous because they are subsumed within the definition. (Pl.'s Opp'n 33.)  However, patentees have an obligation to include broader and narrower claims to retain coverage of the invention.  See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc., 285 F.3d 1046, 1057 (Fed. Cir. 2002) (explaining that "the patentee has an obligation to draft claims that capture all reasonably foreseeable ways to practice the invention").  Such construction additionally protects a patentee in the event that the broader claims are rejected by the patent office or invalidated in the course of litigation.  Of concern is when a claim limitation becomes "meaninglessly empty," in that it contributes nothing to the understanding of the claim.  It is not concerning when a claim is dependent upon another; that type of superfluousness is common to any well-drafted patent.

tops. (See Section II(B)(2)(A).)  Defendant contends that two of
its models, Stryker Part Nos. 2108-102S12 and 2108-151S4, have
curved tops and therefore do not infringe plaintiff's patent.
However, defendant concedes that these models had flat tops until
May 2005. (Def.'s Reply 2.)

Under 35 U.S.C. § 271, "whoever without authority
makes, uses, offers to sell, or sells any patented invention,
within the United States or imports into the United States any
patented invention during the term of the patent therefor,
infringes the patent."  Plaintiff presents pictures of the 2108-
102S12 and 2108-141S4 parts with flat tops, and defendant
counters these pictures with a declaration from its research
director David Tallon, stating that these models do not currently
have flat tops.  The fact that Stryker Parts No. 2108-102S12 and
2108-151S4 may not currently infringe the '253 and/or '353
patents is not determinative, because they may have infringed at
some point during the life of the patent.  Therefore, summary
judgment of noninfringement may not be granted on this issue.[9]

## 2. Stryker Dual-Cut Blades

Defendant additionally argues that the Stryker Dual-Cut
blades do not infringe Claims 1, 3, 5, 7, 9, and 11 of the '353
patent because (1) the teeth do not end in "a tip," (2) the
teeth's tips are not "arrayed on a line perpendicular to the
centrally positioned long axis," (3) the blades are not

---

[9]    At oral argument, plaintiff offered to stipulate to
noninfringement with regard to Stryker blades provided that
defendant provided sufficient evidence that particular blades had
curved tops.  The court encourages the parties to come to an
efficient resolution of this issue.

17

configured such that "each hypotenuse is oriented toward the centrally positioned long axis," and (4) the teeth are not shaped substantially as right triangles.

Because the Dual-Cut blades are not configured such that "each hypotenuse is oriented toward the centrally positioned long axis," summary judgment of the Dual-Cut blade's noninfringement of the '353 patent is warranted.  Regardless of whether the teeth on the Dual-Cut blades are considered to be fishtail-shaped or triangular, there are multiple hypotenuses facing in opposite directions.  Therefore, all hypotenuses of the teeth on these blades are not oriented toward the central axis, and do not infringe the '353 patent as a matter of law.

Defendant further argues that its Dual-Cut blades do not infringe Claims 1, 14, and 15-18 of the '253 patent, which include claim language that the teeth must "end in a . . . tip," and that these tips be "configured to be placed substantially on a tangent."  As discussed above, the term "a tip" refers to one or more tips, and even a description of the blades as having multiple tips could therefore infringe the '253 patent.  Additionally, the '253 patent requires that the tips be placed "substantially on a tangent."  The Dual-Cut blades have offset teeth that are "arrayed on a line perpendicular to the centrally positioned long axis."  This court has interpreted the term "a line" to refer to a single straight line that is the intersection of two planes.  The parties do not dispute that the teeth on Striker's Dual-Cut Blades are offset.  However, from actual physical examination of the blades, it was apparent that although the particular tips are not precisely in line, they are not so

18

far offset that they do not overlap.  The center of each tip does
not appear to intersect a straight line that is perpendicular to
the central axis, but each tip does in fact <u>touch</u> such a line,
and the tips are "substantially" on a tangent.  Therefore, the
court cannot grant summary judgment of noninfringement on this
issue.[10]

        Claims 2, 4, 6, 8, 10, and 12 of the '253 patent
contain the following four requirements: (1) the blades must have
teeth where "either all of the individual hypotenuses are
oriented towards the centrally positioned long axis, or all of
the individual hypotenuses are oriented away from the centrally
positioned long axis," (2) the teeth must be shaped
"substantially as right triangles," (3) the cutting surfaces must
end in "a tip," and (4) the teeth must be "configured to be
placed substantially on a tangent."  As discussed above, the
Dual-Cut blades have hypotenuses which face both towards <u>and</u> away
from the centrally positioned long axis; they are not all
oriented either towards or away from the central axis.

        Additionally, the Dual-Cut blades are not shaped
substantially as right triangles.  Even if the court were to
"cut" across the fishtail and sever the two pointed ends, the
fishtail shape contains a curved outer edge that would prevent
the edges from resembling the straight sides of a right triangle.
Moreover, the argument that each fishtail should be viewed as two

---

        [10]    One model of the Dual-Cut blades, Stryker Part No.
4225-147-090, differs from the rest in that it does not have
offset teeth.  Because its teeth are not offset, summary judgment
of non-infringement of Claims 1, 14, and 15-18 with respect to
this model is also precluded.

1  right triangles presumes that the court would cut the fishtails

2  at the point where two right triangles should form.  Even if a

3  fishtail tooth were more accurately described as two teeth, or

4  two "cutting surfaces," there are several ways to demarcate the

5  teeth, and there is no reason to choose plaintiff's construction

6  over any other (except that plaintiff's point of demarcation

7  could possibly create two right triangles).  Finally, others who

8  are skilled in the art have similarly defined a fishtail shape as

9  a singular tooth.  In particular, the 243,136 patent covers a

10  surgical saw blade with fishtail shaped teeth and refers to each

11  individual fishtail as a separate tooth.  (Pl.'s Opp'n to Mot.

12  for Summ. J., Fisher Decl. Ex. G, '136 patent, 2:0028 ("each

13  tooth includes a V-shaped valley between the cutting edges

14  thereof with the apex of the valley disposed on the centerline []

15  of the tooth").)[11]   For these reasons, the Dual-Cut blades do

16  not infringe Claims 2, 4, 6, 8, 10, and 12 of the '253 patent.

17               3. Stryker Offset-teeth Blades

18            Defendant additionally argues that the Stryker Offset-

19  teeth blades do not infringe claims 1, 3, 5, 7, 9, and 11 of the

20  '353 patent because the teeth's tips are offset and not "arrayed

21  on a line perpendicular to the centrally positioned long axis."

22

23  _____

      [11]    Plaintiff analogizes to inapposite prior art for the
      proposition that each fishtail tooth is really two triangular
24    teeth.  (Pl.'s Mot. for Summ. J. 24-29.)  One example cited by
      plaintiff refers to the top of a "tooth-pair," which appears to be an
25    example of a patentee acting as his or her own lexicographer that
      would not be readily translated to another patentee.  Other
26    patents describe two adjacent triangular teeth, which are quite
      distinct from the teeth at issue here--taken together, they
27    resemble only the top of a fishtail, without a supporting stalk.
      By contrast, the '136 patent, which is appended to plaintiff's
28    own motion, provides a clearly analogous fishtail shape that is
      described as one tooth.

As discussed above, the offset teeth, although not centered on such a line, may still be positioned on that line.  Therefore, summary judgment of non-infringement of the '353 patent is unwarranted with respect to the Stryker Offset-teeth blades.

Similarly, defendant's Offset-teeth blades may infringe Claims 1, 14, and 15-18 of the '253 patent, which include claim language that the teeth must "end in a . . . tip," and that these tips be "configured to be placed substantially on a tangent." Claims 2, 4, 6, 8, 10, and 12 of the '253 patent similarly contain the requirement that the teeth must be "configured to be placed substantially on a tangent."  As previously discussed, the Stryker Offset-teeth blades may not be directly centered on a line, but they are "substantially" positioned on a line, or tangent.  Therefore, the court cannot grant summary judgment of non-infringement on this issue.

D. Infringement Under the Doctrine of Equivalents

Some products or processes not strictly covered by the patent claims may still infringe, if they fall under the additional scope of protection allowed by the doctrine of equivalents.  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes.").  Insubstantial differences between an accused product and a patent that preclude literal infringement may not prevent infringement under the doctrine of equivalents (DOE).  Id.  An accused product would infringe under the DOE if that product passed the function-way-

21

result test: if, with respect to each claim limitation, it performed substantially the same function in substantially the same way to achieve substantially the same result as the patented product. Dawn Equip. Co. v. Ky. Farms Inc., 140 F.3d 1009, 1016 (Fed. Cir. 1998).

Of the claim language analyzed by the court, there are two limitations for which the court did not find literal infringement: the court found that Dual-Cut blades are not configured such that "each hypotenuse is oriented toward the centrally positioned long axis," and that the teeth of Dual-Cut blades are not shaped "substantially as right triangles." Plaintiff argues that the defendant's fishtail structures are insubstantially different from the triangular teeth of its invention and that the orientation of the hypotenuses in both directions is similarly insignificant.

Plaintiff is estopped from asserting that a fishtail shape is equivalent to a right triangle under the DOE. When a party narrows claim scope by amending the claims or making arguments to the PTO during its efforts to patent the invention, that party is estopped from recapturing the previously surrendered claim scope with the doctrine of equivalents. Honeywell Intern. Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139-40 (Fed. Cir. 2004). Plaintiff overcame rejection of the invention by narrowing its claims and writing to the patent examiner that, in combination with the geometric arrangement of the teeth, "Applicants' limitation to saw blades having right triangularly shaped teeth[] clearly renders the revised claims patentable over the prior art." (Def.'s Mot. for Summ. J. Ex. I

22

1    ('353 patent file history, Aug. 13, 1992 Amendments) at 7-8.)

2         The application of the DOE is thus barred through

3    prosecution history estoppel from covering something beyond the

4    claim limitation of a right triangle shape.  Because each claim

5    limitation must be present actually or equivalently for a product

6    to be infringing, the DOE will not disturb this court's finding

7    of noninfringement for the Stryker Dual-Cut blades of claims that

8    include the limitation of teeth shaped as right triangles,

9    namely, the '353 patent and Claims 2, 4, 6, 8, 10 and 12 of the

10   '253 patent.

11        IT IS THEREFORE ORDERED that defendant's motion for

12   summary judgment of noninfringement of the all asserted claims of

13   the '353 patent and Claims 2, 4, 6, 8, 10 and 12 of the '253

14   patent be, and the same hereby is, GRANTED with respect to the

15   Stryker Dual-Cut blades.

16        IT IS FURTHER ORDERED that defendant's motion for

17   summary judgment of noninfringement of the all asserted claims of

18   the '353 patent and Claims 2, 4, 6, 8, 10, and 12 of the '253

19   patent be, and the same hereby is, DENIED with respect to the

20   Stryker Offset blades.

21        IT IS FURTHER ORDERED that defendant's motion for

22   summary judgment of noninfringement of Claims 1 and 14-18 of the

23   '253 patent be, and the same hereby is, DENIED with respect to

24   the Stryker Dual-Cut blades and Offset blades.

25        IT IS FURTHER ORDERED that defendant's motion for

26   summary judgment of noninfringement of the '353 and '253 patents

27   ///

28   ///

23

1    be, and the same hereby is, DENIED with respect to Stryker Parts

2    No. 2108-102S12 and 2108-151S4.

3    DATED:   March 30, 2006

4

5

6                  WILLIAM B. SHUBB

7                  UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28