1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11   SYNVASIVE CORPORATION,
                                    NO. CIV. S-05-1515 WBS DAD
12                                  NO. CIV. S-06-0049 WBS DAD
              Plaintiff,           CONSOLIDATED
13
14       v.                        MEMORANDUM AND ORDER RE:
                                   MOTIONS FOR SUMMARY JUDGMENT
15   STRYKER CORPORATION,

16            Defendant.
     _____
17   STRYKER CORPORATION,

18            Counterclaimant,

19       v.

20   SYNVASIVE CORPORATION,

21            Counterdefendant.

22                        ----oo0oo----

23            Currently before the court are defendant Stryker

24   Corporation's motions for summary judgment of noninfringement and

25   of invalidity of three patents held by plaintiff Synvasive

26   Corporation, and plaintiff's motion for partial summary judgment

27   of infringement of two specific claims of two of its patents.

28   ///

                            1

I.    Factual and Procedural Background

        Plaintiff Synvasive is the assignee of U.S. Patents
6,022,353 ("the '353 patent"), 6,503,253 ("the '253 patent"), and
6,723,101 ("the '101 patent"), all of which relate to surgical
saw blades and related methods of using surgical saw blades, and
are based on a patent application filed with the Patent and
Trademark Office ("PTO") on May 30, 1991.  (Pl.'s Opp'n to Mot.
for Summ. J. of Invalidity 5.)  The '101 and '253 patents are
continuations of the '353 patent; thus, although the claims in
the three patents differ, they share a common specification.
(Id.)  The '353 patent issued on February 8, 2000; the '253
patent issued on January 7, 2003; and the '101 patent issued on
April 20, 2004.  (05-1515 Compl. ¶¶ 5,7; 06-0049 Compl. ¶ 5.)  A
figure from the '353 patent is included below; it depicts one
embodiment of the patented blade.[1]



There are two categories of products manufactured by defendant
that allegedly infringe the '253, '353, and '101 patents:  (1)

---

        [1]    This figure is also included in the '253 and '101
patents.

Stryker's Dual-Cut blades, with "fishtail-shaped" teeth that are offset;[2] and (2) Stryker's Offset teeth blades.[3]

On March 30, 2006, the court granted defendant's motion for summary judgment for all asserted claims of the '353 patent and Claims 2, 4, 6, 8, 10, and 12 of the '253 patent with respect to the Stryker Dual-Cut blades.  (March 30, 2006 Order.)  The court denied defendant's motion with respect to the Stryker Offset blades and Stryker Parts Nos. 2108-102S12 and 2108-151S4.  (Id.)  The court construed the claim terms of the '353 and '253 patents pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).

On May 4, 2006, the court granted plaintiff's motion to consolidate Case No. 06-0049 with Case No. 05-1515.  (May 4, 2006 Order.)  The court ordered that its March 30, 2006, Order, granting summary judgment in part, would apply to the consolidated suit, including its previous claim construction.  (Id. 3-4.)

In its current motion, plaintiff argues that defendant's Dual-Cut blades infringe Claims 1 and 14 of the '253 patent and Claims 1-4 and 10 of the '101 patent.  (March 30, 2006 Order 23; Pl.'s Opp'n to Mot. for Summ. J. of Noninfringement 3.)

---

[2]    One model of the Dual-Cut blades, Stryker Part No. 4225-147-090, does not have offset teeth.

[3]    The court will include within this category Stryker Part Nos. 2108-151S4 and 2108-102S12.  There is not a dispute that these blades were manufactured in a flat-top configuration until at least April, 2005 and May, 2005 respectively.  (Hulse Decl. Ex. C (Def.'s Responses and Am. Responses to Interrogs. Nos. 35, 37).)  Plaintiff alleges infringement only of the flat-top configurations of these blades. (Pl.'s Mot. for Summ. J. 5, n.2.)

Plaintiff alleges that defendant's Offset blades infringe Claims 1, 3, 5, 7, 9, and 11 of the '353 patent; Claims 1, 2, 4, 6, 8, 10, 12, and 14-18 of the '253 patent; and Claims 1-5, 7, 8, 10, 11, 13, 15, and 17 of the '101 patent.[4]  (March 30, 2006 Order 23-24; Pl.'s Opp'n to Mot. for Summ. J. of Noninfringement 3.) However, plaintiff fails to defend against Claims 5, 7, 8, 11, 13, 15, and 17.  Therefore, the court will enter summary judgment in favor of defendant with respect to those claims.[5]

     The court's March 30, 2006, Order, provided a detailed description of the asserted claims with respect to the '353 and '253 patents.  (March 30, 2006 Order 3-5.)  The '101 patent is a method patent.  Claim 1 of the '101 patent is a method for surgical cutting of bone containing the following elements:  (1) contacting the bone with an oscillatory cutter having a blade with teeth such that, only initially, a multiplicity of different teeth contact the bone substantially simultaneously, thereby forming a somewhat linear kerf; and (2) forming the kerf substantially V-shaped by having each tooth alternatively and sequentially contacting the kerf.  (Gont Noninfringement Decl. Ex. E ('101 patent, 7:2-11).)  Claim 2 modifies Claim 1 by requiring "each tooth which next touches the kerf remove bone

---

[4]     Unlike the claims alleged in a complaint, "[t]he claims of the patent provide the concise formal definition of the invention.  They are the numbered paragraphs which 'particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention.'"  Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1258 (Fed. Cir. 1989) (citing 35 U.S.C. § 112).

[5]     Further, the court will address defendant's summary judgment motion of invalidity of the '101 patent only with respect to Claims 1-4 and 10.

1  progressively." (Id. ('101 patent, 7:12-14).)  Claim 3 modifies

2  Claim 2 by requiring "half of the teeth be away from bone contact

3  for clearing bone chips while another half is working." (Id.

4  ('101 patent, 7:15-17).)  Claim 4 modifies Claim 3 by requiring

5  "half of the cutting teeth to cool while out of contact from the

6  bone." (Id. ('101 patent, 7:18-19).)

7        Claim 10 of the '101 patent is a method for surgical

8  cutting of bone requiring the following elements: (1) "contacting

9  the bone with a surgical saw blade" having (a) "a proximal end

10  configured to couple the blade to a surgical bone saw," and a

11  distal end having (i) "substantially identical teeth" for cutting

12  bone, (ii) the teeth ending in tips that are "configured to be

13  placed substantially on a tangent that is perpendicular to the

14  radial line extending from the center of the power tool cutting

15  axis that bisects the arc of travel" of the blade, (iii) such

16  that the teeth contact the bone "to provide better tracking" when

17  forming the kerf, (iv) whereupon the "teeth cut progressively and

18  sequentially as the kerf begins to form," (v) "to provide faster

19  aggressive cutting and efficient chip removal;" and (2) "cutting

20  the bone with the plurality of teeth to form a predetermined cut

21  in the bone." (Id. ('101 patent, 7-8:53-5).)

22        In defendant's first motion for summary judgment, it

23  argues that the Stryker Dual-Cut and Offset blades do not

24  infringe any of the asserted claims of the '353 patent and the

25  '253 patent, and defendant's blades do not infringe any asserted

26  claim of the '101 patent directly, contributorily, or by

27  inducement.  In its second motion, defendant argues that asserted

28  claims of the three patents are invalid because they are

1  indefinite, anticipated by and/or obvious by prior art, and

2  prohibited under the statutory on-sale bar.  Plaintiff filed a

3  motion for partial summary judgment on December 22, 2006, arguing

4  that the Stryker Offset blades infringe Claim 1 of the '353

5  patent and Claim 2 of the '253 patent.[6]

6  II.  Discussion

7       A.  Legal Standard

8            Summary judgment is proper "if the pleadings,

9  depositions, answers to interrogatories, and admissions on file,

10 together with the affidavits, if any, show that there is no

11 genuine issue as to any material fact and that the moving party

12 is entitled to judgment as a matter of law."  Fed. R. Civ. P.

13 56(c).  A material fact is one that could affect the outcome of

14 the suit, and a genuine issue is one that could permit a

15 reasonable jury to enter a verdict in the non-moving party's

16 favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

17 (1986).  The party moving for summary judgment bears the initial

18 burden of establishing the absence of a genuine issue of material

19 fact and can satisfy this burden by presenting evidence that

20 negates an essential element of the non-moving party's case.

21 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

22 Alternatively, the movant can demonstrate that the non-moving

23

24       [6]  Plaintiff specifically enumerates the following
25 products in its summary judgment motion: Stryker Part Nos. 4225-
   070-090, 4225-85-127, 2108-151S4, 2108-102S12, 2108-182-001, and
26 4113-119-090S1.  (Pl.'s Mot. for Summ. J. 1.)  Plaintiff refers
   to these blades collectively as "Stryker Flat-Top Sagittal
27 Blades."  (Id.)  The Court will analyze this category
   collectively as Stryker Offset Blades in order to be consistent
28 with the court's previous order.  Appropriate exceptions will be
   enumerated throughout the order.

1  party cannot provide evidence to support an essential element

2  upon which it will bear the burden of proof at trial.  Id.

3       Once the moving party meets its initial burden, the

4  non-moving party must "go beyond the pleadings and by her own

5  affidavits, or by 'the depositions, answers to interrogatories,

6  and admissions on file,' [and] designate 'specific facts showing

7  that there is a genuine issue for trial.'"  Id. at 324 (quoting

8  Fed. R. Civ. P. 56(e)).  The non-movant "may not rest upon the

9  mere allegations or denials of the adverse party's pleading."

10  Fed. R. Civ. P. 56(e).  Any inferences drawn from the underlying

11  facts must be viewed in the light most favorable to the party

12  opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith

13  Radio Corp., 475 U.S. 574, 587 (1986).

14       The plaintiff movant "must establish beyond

15  peradventure all of the essential elements of the claim or

16  defense to warrant judgment in his favor."  Fontenot v. Upjohn

17  Co., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original);

18  see also Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002) ("a

19  substantially higher hurdle must be surpassed, particularly where

20  . . . the moving party bears the ultimate burden of persuasion .

21  . . at trial").

22       B.   Claim Construction

23       Generally, courts look to three sources for claim

24  construction: the claims, the specification, and the prosecution

25  history.  Markman, 52 F.3d at 979.  The ordinary meaning of terms

26  is sometimes elucidated by common-sense interpretation by judges

27  or use of "general-purpose" dictionaries.  Phillips v. AWH Corp.,

28  415 F.3d 1303, 1314 (Fed. Cir. 2005) (citing Brown v. 3M, 265

7

F.3d 1349, 1352 (Fed. Cir. 2001) (construing claims without "elaborate interpretation")).  Patentees, however, may serve as their own lexicographers when they clearly define terms in a manner different from their generally understood meaning.  K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999).

The court previously construed the meaning of the terms in the patents.  Because the '101 patent is a continuation of the '253 and the '353 patent, and their specifications are almost identical, the court will interpret shared terms in a consistent manner.  See Arthur A. Collins, Inc. v. N. Telecom Ltd., 216 F.3d 1042, 1044 (Fed. Cir. 2000) (affirming noninfringement on summary judgment when a district court interpreted terms shared by two patents because "[b]oth patents share[d] the same written description, and one patent [was] a continuation of the [other] patent").  Defendant asks the court to define a single additional claim term that was not addressed in the court's March 30, 2006, Order.

1.   Terms Defined in the Court's Previous Order

The court construed nearly all of the terms parties assert are relevant to the claims of the patents-in-suit.  (March 30, 2006 Order 8-16.)  The court's construction is briefly reviewed:

A "tooth" is a cutting surface.  (Id. 9-10.)

A "tip" refers to "one or more tips at the distal end of a tooth."  (Id. 10-11.)

"Substantially shaped as right triangles" means "shaped as a triangle in which one of the interior angles is approximately ninety degrees."  (Id. 11.)

1    "Hypotenuse" means "the edge of a triangular cutting

2  surface tooth opposite the interior angle of the triangle that is

3  closest to ninety degrees." (Id. 12.)

4    "Each hypotenuse is oriented toward" means "each tooth

5  should have a hypotenuse that is oriented toward the central long

6  axis, or facing that axis."  (Id.)

7    "A line" in the context of the patents-in-suit means "a

8  single straight line that is the intersection of two planes."

9  (Id. 12-13.)

10    "Arrayed on a line" means "positioned on a single

11  line."  (Id. 13-14.)

12    "Configured to be placed substantially on a tangent" is

13  construed to mean "a blade having a flat-top configuration."

14  (Id. 14.)

15    "Each hypotenuse is oriented at least one of towards

16  and away from the centrally positioned long axis" means "either

17  all of the individual hypotenuses are oriented towards the

18  centrally positioned long axis, or all of the individual

19  hypotenuses are oriented away from the centrally positioned long

20  axis." (Id. 14-16.)

21        2.   Construction of Additional Term

22    Defendant notes that the term "substantially

23  identically shaped" was not addressed in the court's March 30,

24  2006, Order, and requests the court construe the term.  (Def.'s

25  Mot. for Summ. J. of Noninfringement 11.)  Defendant argues that

26  this term should mean that the teeth are "approximately identical

27  in characteristics such as size and shape." (Id. 12.)

28    Most of the time, as here, the words or terms which the

9

1  parties ask the court to construe are the best words or terms
2  that could have been chosen.  However, to say that
3  "substantially" means "substantially" undoubtedly would not pass
4  appellant scrutiny.  The use of the term "substantially" suggests
5  that the objects in question are "approximately" or "almost"
6  identically shaped.  <u>See</u> <u>Anchor Wall Sys. v. Rockwood Retaining</u>
7  <u>Walls, Inc.</u>, 340 F.3d 1298, 1311-12 (Fed. Cir. 2003) (noting that
8  "words of approximation, such as 'generally' and 'substantially,'
9  are descriptive terms commonly used in patent claims to avoid a
10 strict numerical boundary to the specified parameter" (internal
11 quotations omitted; citations omitted)).

12         Defendant argues that the ordinary meaning of the word
13 "identical" means "being <u>exactly</u> equal and alike."  (Def.'s Mot.
14 for Summ. J. of Noninfringement 11-12.)  Construing this with the
15 ordinary meaning of shape, defendant argues that the phrase
16 requires uniformity of size and shape.  (<u>Id.</u> 12.)  That
17 construction would substantially (i.e. just about or almost) read
18 the word "substantially" out of the description.  Even accepting
19 defendant's definition of shape--having or fashioned to a
20 particular form--the court cannot accept defendant's construction
21 of this phrase.  The definition of shape makes no reference to
22 size.  Instead the court will construe "substantially identically
23 shaped" to mean "having a particular form that is approximately
24 exactly alike."  A high degree of similarity in shape, but not
25 mathematical exactness, is required.  <u>Liquid Dynamics Corp. v.</u>
26 <u>Vaughn Co., Inc.</u>, 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("The term
27 'substantial' is a meaningful modifier implying 'approximate,'
28 rather than 'perfect.'").

1    C.   <u>Defendant's Motion for Summary Judgment of</u>

2         <u>Noninfringement of the '353, '253, and '101 Patents</u>

3         Under 35 U.S.C. § 271, "whoever without authority

4    makes, uses, offers to sell, or sells any patented invention,

5    within the United States or imports into the United States any

6    patented invention during the term of the patent therefor,

7    infringes the patent."  "A determination of patent infringement

8    consists of two steps: (1) the court must first interpret the

9    claim, and (2) it must then compare the properly construed claims

10   to the allegedly infringing device."  <u>Playtex Prods., Inc. v.</u>

11   <u>Procter & Gamble Co.</u>, 400 F.3d 901, 905-06 (Fed. Cir. 2005)

12   (citing <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1454

13   (Fed. Cir. 1998) (en banc)); <u>see also</u> <u>Markman v. Westview</u>

14   <u>Instruments, Inc.</u>, 517 U.S. 370, 374 (1996) ("Victory in an

15   infringement suit requires a finding that the patent claim

16   'covers the alleged infringer's product or process,' which in

17   turn necessitates a determination of 'what the words in the claim

18   mean.'").  "To show literal infringement of a patent, a patentee

19   must supply sufficient evidence to prove that the accused product

20   or process meets every element or limitation of a claim."  <u>Rohm &</u>

21   <u>Haas Co. v. Brotech Corp.</u>, 127 F.3d 1089, 1092 (Fed. Cir. 1997)

22   (citations omitted).  Plaintiff bears the burden of proving that

23   each accused product "includes every limitation of [an asserted]

24   claim or an equivalent of each limitation."  <u>Dolly, Inc. v.</u>

25   <u>Spalding & Evanflo Cos.</u>, 16 F.3d 1533, 1535 (Fed. Cir. 1994).

26        1.   <u>Stryker Dual-Cut Blades</u>

27             a.   <u>Literal Infringement</u>

28        Claims 1 and 14 of the '253 patent contain the

11

following elements: (1) a proximal end having a hub for
attachment to an oscillatory power tool; (2) a distal end having
a plurality of substantially identically shaped cutting teeth
(Claim 1 requires that they be an even number of teeth; Claim 14
does not); and (3) tips that are "configured to be placed
substantially on a tangent which is perpendicular to a radial
line extending from the center of the power tool cutting axis
that bisects the arc of travel within which the blade travels . .
. ."  (Gont Noninfringement Decl. Ex. D ('253 patent, 8:36-42).)

          The issue with respect to these claims is whether the
Dual-Cut blades have "substantially identically shaped" cutting
teeth.  Defendant argues that literal infringement is precluded
because the "exterior" teeth and the "interior" teeth are
different in shape and are asymmetrical about the valley.  In
retrospect, and in light of the arguments presently being made,
the court's definition of tooth as "a cutting surface" may be
somewhat ambiguous.  Regardless of how much of the blade is
considered the "tooth," however, it is clear from the engineering
specifications and physical inspection of the blade with the aid
of a magnifier, that the exterior teeth differ in shape from the
interior teeth.

          Specifically, the exterior edge of exterior teeth have
straight sides.  The edges leading into the valley of the
fishtail of the interior teeth are curved.  This is evident
whether the court further defines teeth as encompassing all the
area leading from the trough to the tip, as defendant posits, or
some other line cutting across the tips and containing only a
fractional amount the area encompassed by defendant's

12

1  construction.   Unless the court would reduce the tooth such to
2  that which is substantially indistinguishable from the tip and
3  essentially has a microscopic area, no reasonable jury would fail
4  to conclude that the two outside teeth have straight exterior
5  edges and the remaining teeth have curved edges leading into the
6  valley of the fishtail.   Therefore, the teeth are not
7  substantially identically shaped as a matter of law and the Dual-
8  Cut blades do not literally infringe Claims 1 and 14 of the '253
9  patent.

10              b.   Infringement Under the Doctrine of
11                   Equivalents

12         Some products or processes not strictly covered by the
13  patent claims may still infringe, if they fall under the
14  additional scope of protection allowed by the doctrine of
15  equivalents.   Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki
16  Co., Ltd., 535 U.S. 722, 733 (2002) ("The doctrine of equivalents
17  allows the patentee to claim those insubstantial alterations that
18  were not captured in drafting the original patent claim but which
19  could be created through trivial changes.").   Insubstantial
20  differences between an accused product and a patent that preclude
21  literal infringement may not prevent infringement under the
22  doctrine of equivalents (DOE).   Id.   An accused product would
23  infringe under the DOE if that product passed the function-way-
24  result test: if, with respect to each claim limitation, it
25  performed substantially the same function in substantially the
26  same way to achieve substantially the same result as the patented
27  product.   Dawn Equip. Co. v. Ky. Farms Inc., 140 F.3d 1009, 1016
28  (Fed. Cir. 1998).

1    Plaintiff is estopped from asserting that the fishtail
2    blades are "substantially identically shaped" under the DOE.
3    When a party narrows claim scope by amending the claims or making
4    arguments to the PTO during its efforts to patent the invention,
5    that party is estopped from recapturing the previously
6    surrendered claim scope with the doctrine of equivalents.
7    Honeywell Intern. Inc. v. Hamilton Sundstrand Corp., 370 F.3d
8    1131, 1139-40 (Fed. Cir. 2004).  Plaintiff submitted an amendment
9    to the application that issued as the '253 patent in which claim
10   1 was amended to include the narrowing "substantially identically
11   shaped" limitation to the requirement that "said distal end
12   hav[e] a plurality of cutting teeth." (Gont Noninfringement Decl.
13   Ex. I, 11-12.)  Moreover, to read "substantially identically
14   shaped" in such a way that curved-edged and straight-edged would
15   be functional equivalents would effectively read the
16   "substantially identically shaped" limitation out of the patent.
17   See Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188, 1195 (Fed.
18   Cir. 2005) ("To hold that 'unmounted' is equivalent to 'mounted'
19   would effectively read the 'mounted on' limitation out of the
20   patent.").  The court will grant defendant's motion for summary
21   judgement with respect to the Dual Cut blades for Claims 1 and 14
22   of the '253 patent.

23                    2.   Stryker Offset Blades

24       Defendant argues that the Stryker Offset blades do not
25   literally infringe any of the asserted claims of the '353 patent
26   and the '253 patent.  Because the offset blades are curved to the
27   sides, defendant argues that the following claim limitations are
28   not met: "substantially identically shaped," "shaped

                                  14

1   substantially as right triangles," and "each hypotenuse is

2   oriented at least one of towards or away from the centrally

3   positioned long axis."  (Def.'s Mot. for Summ. J. on

4   Noninfringement 17-18.)   The court previously declined to grant

5   defendant's summary judgment motion with respect to the offset

6   blades because although the blades may not be directly centered

7   on a line, the blades are "substantially" positioned on a line or

8   tangent.  (March 30, 2006 Order 21.)

9        Defendant's arguments are similar to those the court

10  has already rejected.  Defendant argues the teeth cannot be

11  "substantially identically shaped" because the offset teeth are

12  bent to the sides.  According to the engineering specifications

13  of Stryker Part No. 4225-85-127, the offset range is between

14  .0005 and .0520 inches.  (Dornfeld Noninfringement Decl. Ex. K.)

15  Those specifications fail to indicate any curvature.  They may be

16  very slightly curved, but visual inspection of blades with the

17  aid of a magnifier further persuades this court that no

18  reasonable jury could conclude that the Offset blades and

19  plaintiff's blades are not "substantially identically shaped."

20       As to Claims 2, 4, 6, 8, 10, 12, and 15-18 of the '253

21  patent and all asserted claims of the '353 patent, defendant also

22  argues that the offset blades do not have teeth that are "shaped

23  substantially as right triangles" such that "each hypotenuse is

24  oriented at least one of towards or away from the centrally

25  positioned long axis."[7]  Defendant argues that any triangular

26

27       [7]   These two requirements are specifically enumerated in
    Claim 1 of the '353 patent, which is the only independent claim
28  of that patent.  Claim 1 of the '353 patent also requires that

15

1   shape formed by the tooth cannot be a triangle because a triangle

2   is a three-sided geometric construction in a single plane.

3   Defendant's construction would vitiate the modifier

4   substantially, and thus the court concludes that the teeth are

5   shaped substantially as right triangles.

6          The court discussed the term "each hypotenuse is

7   oriented at least one of towards and away from the centrally

8   positioned long axis" in great detail in the previous order

9   finding the term to mean "either all of the individual

10  hypotenuses are oriented towards the centrally positioned long

11  axis, or all of the individual hypotenuses are oriented away from

12  the centrally positioned long axis." (March 30, 2006 Order 14-

13  16.)  Defendant argues that by bending each tooth, the hypotenuse

14  is no longer oriented toward the centrally positioned axis of the

15  blade.  Regardless of the tooth offsetting, the edge of each

16  individual tooth still radiates from the central axis.  Upon

17  visual inspection with the aid of magnification, the court

18  concludes that no reasonable jury would fail to find that "each

19  hypotenuse is oriented at least one of towards and away from the

20  centrally positioned long axis."  Accordingly, the court will

21  deny defendant's motion for summary judgment of noninfringement

22  of the asserted claims of the '353 and the '253 patents with

23  regard to the Offset blades.[8]

24  _____

25  the teeth be "substantially identically shaped."  For reasons
    previously discussed, the court concludes as a matter of law that
26  the teeth are "substantially identically shaped."

27      [8]   Because the court declines to grant defendant's motion
    on the grounds that literal infringement is precluded, the court
28  does not need to consider whether the doctrine of equivalents

3.   '101 Patent

Plaintiff argues that defendant has contributorily infringed the '101 patent or induced the infringement by defendant's customers.  "Absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement."  Met-Coil Sys., Inc. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986).  Patentee bears the burden of establishing infringement.  Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1325 (Fed. Cir. 2004).  Thus, plaintiff must prove direct infringement of the method patent by a third party if it is to succeed.  See Joy Techs. Inc. v. Flakt, Inc., 6 F.3d 770, 776 (Fed. Cir. 1993) (holding that seller of equipment cannot be a contributory infringer where it is established that there will be no direct infringement of method patent by buyers of equipment); Linear Tech. Corp., 379 F.3d at 1326 ("[A] party may still be liable for inducement or contributory infringement of a method claim under 35 U.S.C. §§ 271(b), (c) if it sells infringing devices to customers who use them in a way that directly infringes the method claim.").

Defendant argues that plaintiff has not proffered evidence demonstrating that someone has used the patented method.  See Tech. Licensing Corp. v. Thompson, Inc., No. 03-1329, slip op. *24 (E.D. Cal. Nov. 17, 2005) ("To use a baseball analogy, it is like the patentee patented "the method of hitting a baseball free hand using a bat with a long, skinny handle."  In that

would preclude summary judgment.

17

situation, the patentee's evidence that "the defendant's product is a bat with a long, skinny handle suitable for hitting a baseball free hand" is not enough to infringe the method patent.") The product in Tech Licensing Corp., however, had other conceivable uses.  Here, it is undisputed that the only use for the accused blades is in conjunction with a powered sagittal bone saw for use in cutting bone.  (Tadlock Decl. Exs. 21-22.) Further, defendant instructs its customers to use the blade only once for each surgical procedure. (Id. Ex. 23.)  Plaintiff also submits evidence that defendant has sold the specified blades to hospitals. (Id. Ex. 24.)

Plaintiff may prove direct infringement by a third party through circumstantial evidence.  Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." (citing Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1272 (Fed. Cir. 1986))).  Plaintiff offers evidence that when the bone is initially contacted by the Dual-Cut blade such that a multiplicity of different teeth contact the bone substantially simultaneously, a linear kerf is formed.  (Dornfeld Decl. Ex. N.) This cutting demonstration also indicates each tooth moves progressively, half of the teeth are away from bone contact for clearing bone ships, and half of the teeth are away from bone contact to in order to cool when not in use.  (Id.)  Plaintiff offers similar evidence for Stryker Offset blades.  (Id. Ex. M.) This is circumstantial evidence, sufficient to create a disputed issue of material fact, of direct infringement by a third party.

18

1  Accordingly, the court cannot grant defendant's motion for

2  summary judgment with respect to Claims 1-4 of the '101 patent.

3         On Claim 10 of the '101 patent, defendant's motion for

4  summary judgment with respect to the Dual-Cut blades will be

5  granted because the court has concluded, above, that the teeth

6  differ in shape.  Defendant's motion with respect to the Offset

7  blades will also be denied because the cutting demonstration

8  mentioned above also creates a disputed question of fact.

9       D.   <u>Defendant's Motion for Summary Judgment of Invalidity</u>

10           <u>of the '353, '253, and '101 Patents</u>

11         Defendant moves for summary judgment of invalidity of

12  patents-in-suit on the basis that the asserted claims are

13  anticipated and/or obvious by prior art, prohibited by the

14  statutory on-sale bar pursuant to 35 U.S.C. § 102(b), and

15  indefinite under 35 U.S.C. § 112.  The party seeking to establish

16  the invalidity of a patent "must overcome the presumption of

17  validity in 35 U.S.C. § 282 by clear and convincing evidence."

18  <u>Nystrom v. Trex Co.</u>, 374 F.3d 1105, 1117 (Fed. Cir. 2004).

19  Standards for anticipation and obviousness are by viewed by a

20  person of ordinary skill in the field of the invention.  <u>Scripps</u>

21  <u>Clinic</u>, 927 F.2d at 1576; 35 U.S.C. § 103.  The parties

22  essentially agree that the standard for adjudging one of ordinary

23  skill is "someone who, in 1991, would have a Bachelor of Science

24  degree in Mechanical Engineering and at least three years of

25  experience involving the design or manufacture of surgical

26  tools." (Def.'s Mot. for Summ. J. of Invalidity 8; Dornfeld

27  Invalidity Decl. ¶ 9.)  Plaintiff would replace the term surgical

28  tools with mechanical devices because surgical tools could

include devices which are not primarily mechanical.  (Dornfeld
Invalidity Decl. ¶ 10.)

       1.  <u>Anticipation</u>

      A patent is anticipated, and therefore invalidated, by
prior art if (1) the invention it claims was known or used by
others in this country before the patent application was filed;
(2) the invention was in public use or on sale in this country
more than one year before the application was filed; (3) the
invention was described in someone else's patent before the
patent applicant invented what is claimed; or (4) the invention
was made in this country by another inventor before it was
invented by the applicant, and the other inventor did not
abandon, suppress, or conceal his invention.  <u>See</u> 35 U.S.C. §
102(a), (b), (e)(2), (g)(2).

      An earlier invention will not "anticipate" a later
invention unless there is "no difference between the claimed
invention and the reference disclosure, as viewed by a person of
ordinary skill in the field of the invention." <u>Scripps Clinic
and Research Found. v. Genentech, Inc.</u>, 927 F.2d 1565, 1576 (Fed.
Cir. 1991).  Thus, anticipation requires the presence in a single
prior art disclosure of each and every element of a claimed
invention.  <u>Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.</u>,
34 F.3d 1048, 1052 (Fed. Cir. 1994).  Whether an earlier
reference anticipates a claim or claims of a patent is a question
of fact.  <u>Scripps</u>, 927 F.3d at 1575; <u>Operations Int'l Ltd. v.
Solutia, Inc.</u>, 289 F.3d 1367, 1376 (Fed. Cir. 2003).  "To
anticipate a claim, a reference must disclose every element of
the challenged claim and enable one skilled in the art to make

20

1  the anticipating subject matter." <u>PPG Indus. v. Guardian Indus.</u>

2  <u>Corp.</u>, 75 F.3d 1558, 1566 (Fed. Cir. 1996) (citations omitted).

3                    a.   <u>The '253 Patent</u>

4           The court will discuss defendant's anticipation

5  arguments with respect to the '253 patent first because all of

6  the prior art cited by defendant is asserted against this patent.

7  Claims 1 and 14 of the '253 patent contain the following

8  elements: (1) a proximal end having a hub for attachment to an

9  oscillatory power tool; (2) a distal end having a plurality of

10 substantially identically shaped cutting teeth (Claim 1 requires

11 that they be an even number of teeth; Claim 14 does not); and (3)

12 tips that are "configured to be placed substantially on a tangent

13 which is perpendicular to a radial line extending from the center

14 of the power tool cutting axis that bisects the arc of travel

15 within which the blade travels;" so that said teeth (i) provide

16 better tracking when forming the kerf in the bone (Claim 14 lacks

17 this sub-limitation), (ii) cut progressively and sequentially as

18 the kerf begins to form, and (iii) provide for efficient chip

19 removal.  Defendant argues that the following patents anticipate

20 Claims 1 and 14 of the '253 patent:  U.S. Patent No. 5,122,142

21 ("Pascaloff '142"); U.S. Patent No. 5,263,972 ("Evans '972");

22 U.S. Patent No. Des. 337,160 ("Evans '160"); Stryker Part No.

23 0277-534-053; and U.S. Patent No. 4,513,742 ("Arnegger '742")

24 (cited for anticipation of Claim 14 only).

25          Defendant's expert, Dr. Carl Jacobs, opines that each

26 reference anticipates Claim 14 of the '253 patent and Claim 1 is

27 anticipated by Pascaloff '142, Evans '972, Evans '160, Stryker

28 Part No. 0277-534-053.  (Jacobs Invalidity Decl.)  These

                              21

references are drawings of surgical saw blades that show tips of teeth placed somewhat on a line.  However, Figure 5 of Pascaloff '142 indicates that the teeth are not substantially arrayed on a tangent.

Plaintiff's expert, Dr. David Dornfeld states that it is improper, as a matter of proper scientific analysis, to "rely solely on drawings in patents and other written materials to determine the actual shape, dimensions, or functionality of an object as the drawings, without more, generally do not provide sufficient information from which to make such determinations." (Dornfeld Invalidity Decl. ¶ 20.)  As an example, plaintiff submits a blade designed by Gregory May, which appears to show a flat-top configuration.  (Hulse Invalidity Decl. Ex. 27.) However, Mr. May testified that the blade he designed had teeth on an arc.  (Id. Ex. 42.)  Further, Dornfeld argues that one skilled in the art "would have understood that such drawings depict blades with tips placed on an arc, as that was the standard design in the field in the 1991 time frame and earlier." (Id.)

On summary judgment, any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, not the motion's proponent. Matsushita, 475 U.S. at 587 (1986).  In light of testimony from Mr. May and Dr. Dornfeld, a reasonable jury could find that Evans '942, Evans '160, Stryker Part No. 0277-534-053, and Arnegger '742 do not have blades with tips "configured to be placed substantially on a tangent."  Whether each reference anticipates a flat-top configuration is a disputed question of material fact.

22

1    Similarly, plaintiff's expert asserts after consulting

2   the report and exhibits of defendant's expert as well as the

3   patents-in-suit and the cited references that none of the cited

4   references indicate a blade with teeth that (i) provide better

5   tracking when forming the kerf in the bone, (ii) cut

6   progressively and sequentially as the kerf begins to form, and

7   (iii) provide for efficient chip removal.  (Dornfeld Invalidity

8   Decl. ¶¶ 25, 33, 39, 49, 58.)  Thus, whether each reference

9   demonstrates by clear and convincing evidence that the referenced

10  blade has such teeth is a disputed question for the trier of

11  fact.  A reference must disclose every element of the challenged

12  claim.  PPG Indus., 75 F.3d at 1566 (Fed. Cir. 1996).  Because

13  disputed questions remain concerning certain elements, the court

14  cannot conclude on summary judgment that any of the references

15  anticipates Claims 1 and 14.

16    Defendant argues that Pascaloff '142 anticipates Claims

17  2, 4, 6, 8, 10, 12, and 15-18 of the '253 patent.  Claims 15-18

18  are dependant on Claim 14 so summary judgment cannot be granted

19  for the same reason as discussed with respect to Claim 14.

20  Claims 2 and 4 require, inter alia, a blade that has tips

21  "configured to be placed substantially on a tangent."  Claims 6,

22  8, 10, and 12 require, inter alia, a blade that has tips

23  "configured to be placed substantially on a tangent" and teeth

24  that cut such that said teeth (i) provide better tracking when

25  forming the kerf in the bone, (ii) cut progressively and

26  sequentially as the kerf begins to form, and (iii) provide for

27  efficient chip removal.  Pascaloff '142 raises at least the

28  following questions that must be resolved by the trier of fact:

1  (1) whether Pascaloff '142 demonstrates by clear and convincing

2  evidence that its blade has tips "configured to be placed

3  substantially on a tangent" so that it has a flat-top

4  configuration, and (2) whether its blade has teeth that cut such

5  that said teeth (i) provide better tracking when forming the kerf

6  in the bone, (ii) cut progressively and sequentially as the kerf

7  begins to form, and (iii) provide for efficient chip removal.

8  Therefore, Pascaloff '142 does not anticipate these claims as

9  matter of law.

10          b.   The '353 Patent

11          Defendant argues that Pascaloff '142 anticipates Claims

12  1, 3, 5, 7, 9, and 11 of the '353 patent.  Claim 1 requires,

13  <u>inter</u> <u>alia</u>, a blade with teeth wherein the "tips are arrayed on a

14  line perpendicular to the centrally positioned long axis."  (<u>Id.</u>)

15  Pascaloff '142 does not anticipate Claim 1 of the '353 patent as

16  a matter of law because there is a disputed material fact whether

17  its blade has tips "configured to be placed substantially on a

18  tangent" so that it has a flat-top configuration.  The only

19  independent claim of the '353 patent that plaintiff alleges

20  defendant's products infringe is Claim 1.  All other asserted

21  claims in the patent are dependent upon Claim 1.  (March 30, 2006

22  Order 3-4.)  Because Pascaloff '142 does not anticipate Claim 1

23  as a matter of law; Claims 3, 5, 7, 9, and 11 are not anticipated

24  as a matter of law.

25          c.   The '101 Patent

26          Defendant argues that Pascaloff '142, Evans '160, Evans

27  '972, Stryker Part No. 0277-534-053, and Arnegger '742 anticipate

28  Claims 1-4 and 10 of the '101 patent.  As discussed, <u>supra</u>,

1   Claims 2, 3, and 4 all modify and depend on Claim 1.  Claim 1

2   requires, _inter alia_, teeth such that said teeth (i) provide

3   better tracking when forming the kerf in the bone, (ii) cut

4   progressively and sequentially as the kerf begins to form, and

5   (iii) provide for efficient chip removal.  Whether each of the

6   above references indicates a blade that demonstrates such cutting

7   characteristics is a disputed question of fact.  Accordingly,

8   summary judgment is not proper for Claims 1-4.

9        Claim 10 requires, _inter alia_, a blade with teeth (1)

10  wherein the teeth "are configured to be placed substantially on a

11  tangent perpendicular" to the central axis; and (2) said teeth

12  (i) provide better tracking when forming the kerf in the bone,

13  (ii) cut progressively and sequentially as the kerf begins to

14  form, and (iii) provide for efficient chip removal.  With regard

15  to Claim 10, the following facts must be determined by the trier

16  of fact:  (1) whether the reference demonstrates by clear and

17  convincing evidence that the referenced blade has tips

18  "configured to be placed substantially on a tangent" so that it

19  has a flat-top configuration, and (2) whether the referenced

20  blade has teeth that (i) provide better tracking when forming the

21  kerf in the bone, (ii) cut progressively and sequentially as the

22  kerf begins to form, and (iii) provide for efficient chip

23  removal.  Accordingly, summary judgment is not proper for Claim

24  10.

25        Because the court finds that there are disputed issues

26  of fact as to whether any cited reference anticipates all the

27  elements of any asserted claim, it cannot conclude as a matter of

28  law that a reasonable jury would find that any of the above

1 references anticipates any asserted claim by clear and convincing
2 evidence.

3        2.   On-Sale Bar

4        A person is not entitled to patent an invention if it
5 was "on sale in this country, more than one year prior to the
6 date of the application for patent in the United States."  35
7 U.S.C. § 102(b).  The on-sale bar applies when there is a
8 commercial offer for sale, which includes two elements: (1) a
9 commercial offer and (2) the offer was for the patented
10 invention.  Sparton Corp. v. United States, 399 F.3d 1321, 1323
11 (Fed. Cir. 2005) ("While the Supreme Court has not explained what
12 is necessary for a 'commercial offer for sale,' we have held that
13 two elements are necessary.  Namely, a court must find that (1)
14 there was a 'commercial offer'; and (2) that offer was for the
15 patented invention." (citing Scaltech, Inc. v. Retec/Tetra,
16 L.L.C., 269 F.3d 1321, 1328 (Fed. Cir. 2001))).

17        Plaintiff raises a material disputed fact as to whether
18 there was a commercial offer of Stryker Part No. 0277-534-053
19 prior to the critical date of May 31, 1990.  Specifically,
20 defendant's drawings for this part indicate a date of June, 1990
21 (Hulse Invalidity Decl. Ex. 25).  As discussed, supra, Part
22 II.D.1, whether Stryker Part No. 0277-534-053 has a flat-top
23 configuration and the cutting characteristics detailed in the
24 claims is a disputed fact question.  Defendant fails to meet its
25 burden on summary judgment to invoke the on-sale bar.

26        3.   Obviousness

27        A patent is invalid due to obviousness "if the
28 differences between the subject matter sought to be patented and

26

the prior art are such that the subject matter as a whole would
have been obvious at the time the invention was made to a person
having ordinary skill in the art . . . ." 35 U.S.C. § 103.  The
determination of obviousness is a question of law based on
underlying factual considerations, including (1) the scope and
content of the prior art; (2) the differences between the prior
art and the claims at issue; (3) the level of ordinary skill in
the art; and (4) any "secondary considerations," such as whether
the inventor was responding to long felt but unsolved needs, the
failures of others, and the commercial success of the invention.
Graham v. John Deere Co., 383 U.S. 1, 17 (1966).

        The court must also take care not to enter the
"tempting but forbidden zone of hindsight" in analyzing whether
an invention would have been obvious.  In re Dembiczak, 175 F.3d
994, 998 (Fed. Cir. 1999) Unlike anticipation, where a given
reference must contain all elements of an asserted patent claim,
elements from different prior art references may be combined;
however, there must be some teaching, suggestion, or reason in
those references to select the particular elements and combine
them as was combined by the inventor of the challenged patent.
Cf. Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc., 278 F.3d
1366, 1372 (Fed. Cir. 2002).

                    a.   The '253 Patent

        Defendant argues that Claim 14 of the '253 patent is
obvious alone or with any combination of Pascaloff '142, Evans
'160, Evans '972, Stryker Part No. 0277-534-053, and Arnegger
'742.  As discussed, supra, none of these five cited references
above alone would render Claim 14 of the '253 patent obvious.  It

27

remains a disputed question of material fact whether any of the

five references have a blade constructed in a flat-top

configuration.  Defendant does not meet its burden of showing a

combination of the above references that would indicate the next

obvious step in the inventive process would have been

constructing a blade with a flat-top configuration.  Because the

defendant has failed to show why a flat-top configuration is

obvious based on the cited references, this essential question of

fact has not been conclusively established.  The court cannot

conclude that Claim 14 is obvious as a matter of law.  Further,

defendant does not meet its burden of showing a combination of

the above references that would indicate the next obvious step in

the inventive process would have been to create a blade with a

cutting action such that the "teeth cut both progressively and

sequentially" to "provide faster aggressive cutting and efficient

chip removal" and "better tracking."

          Moreover, secondary considerations "can often serve as

insurance against the insidious attraction of the siren hindsight

when confronted with a difficult task of evaluating the prior

art."  W.L. Gore & Assocs., Inc., v. Garlock, Inc., 721 F.2d

1540, 1553 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984).

Secondary considerations include whether the inventor was

responding to long felt but unsolved needs, the failures of

others, and the commercial success of the invention.  Graham, 383

U.S. at 17.  Plaintiff presents evidence that there was a long

felt need for a different type of cutting blade given that blades

prior to 1991 often kicked out of the cutting grove.  (Fisher

Decl. ¶ 4.)  Plaintiff also presents evidence that, given the

1   state of the art at the time of invention, it was not expected

2   that a flat-top configuration would perform more effectively at

3   cutting bone than the predominate curved-top configuration. (Id.

4   ¶¶ 4-6.)  Additionally, plaintiff presents evidence that the

5   inventions claimed in the patents-in-suit were commercially

6   successful. (Id. ¶ 6; Pollock Decl. ¶ 6.)  Secondary

7   considerations are not themselves dispositive. See Newell Cos.

8   v. Kenney Mfg. Co., 864 F.2d 757, 768 (Fed. Cir. 1988).  However,

9   this evidence further calls into question defendant's assertion

10  that there is not a disputed material fact that a combination of

11  references encompasses all elements of Claim 14 or that a missing

12  element was the next obvious step in the inventive process so

13  that the court may conclude that Claim 14 was obvious.

14          Defendant argues that Claim 1 is obvious given any or a

15  combination of Pascaloff '142, Evans '160, Evans '972, and

16  Stryker Part No. 0277-534-053; Claims 2 and 17 are obvious given

17  any or a combination of Evans '160, Evans '972, Stryker Part No.

18  0277-534-053, and Arnegger '742; and Claims 4, 6, 8, 10, 12, 15,

19  16, and 18 are obvious given any or a combination of Evans '160,

20  Evans '972, Stryker Part No. 0277-534-053, and Arnegger '742.  As

21  discussed, supra, no cited reference alone would render these

22  claims obvious.  As discussed with respect to Claim 14 of the

23  '253 patent, defendant does not meet its burden of showing a

24  combination of the above references that would indicate the next

25  obvious step in the inventive process would have been

26  constructing blades with a flat-top configuration.  Thus, there

27  is no combination of the above references that would render these

28  claims obvious on summary judgment.  Moreover, secondary

29

considerations bolster the court's decision to deny defendant's motion for summary judgment of invalidity with respect to these claims.

### b. The '353 Patent

Defendant argues that Claims 1, 3, 5, 7, 9, and 11 of the '353 patent are obvious given Pascaloff '142 or a combination of Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277-534-053, and Arnegger '742.  As discussed, _supra_, Pascaloff '142 does not render the '353 patent claims obvious on summary judgment.  As also discussed, _supra_, defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing blades with a flat-top configuration.  Thus, there is no combination of the above references that would render Claims 1, 3, 5, 7, 9, and 11 obvious on summary judgment.  Moreover, secondary considerations bolster the court's decision to deny defendant's motion for summary judgment of invalidity with respect to these claims.

### c. The '101 Patent

Defendant argues that Claims 1-4 and 10 are obvious given any or a combination of Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277-534-053, and Arnegger '742.  As discussed, _supra_, none of the five cited references above alone would render Claims 1-4 and 10 of the '101 patent obvious.  Because defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing blades with a flat-top configuration, there is no

30

1  combination of the above references that would render Claims 1-4

2  and 10 obvious on summary judgment.  Further, defendant does not

3  meet its burden of showing a combination of the above references

4  that would indicate the next obvious step in the inventive

5  process would have been to create a blade with a cutting action

6  such that the "teeth cut both progressively and sequentially" to

7  "provide faster aggressive cutting and efficient chip removal"

8  and "better tracking."  Moreover, secondary considerations

9  bolster the court's decision to deny defendant's motion for

10  summary judgment of invalidity with respect to these claims.

11      Because this court finds that there are disputed facts

12  as to whether any combination of the cited references renders any

13  asserted claim obvious, the court cannot conclude as a matter of

14  law that any asserted claim is obvious.

15          4.   Indefiniteness

16      The claims of a patent must be definite enough so as to

17  "particularly point[] out and distinctly claim[] the subject

18  matter which the applicant regards as his invention."  35 U.S.C.

19  § 112.  The claims must "inform the public during the life of the

20  patent of the limits of the monopoly asserted, so that it may be

21  known which features may be safely used or manufactured without a

22  license and which may not."  United Carbon Co. v. Binney & Smith

23  Co., 317 U.S. 228, 232 (1942).  A claim fails to meet this

24  requirement if one of ordinary skill in the art would not

25  understand the bounds of the claim when read in light of the

26  specification.  Union Pac. Resource Co. v. Chesapeake Energy

27  Corp., 236 F.3d 684 (Fed. Cir. 2001); Morton Int'l, Inc. v.

28  Cardinal Chem. Co., 5 F.3d 1464, 1470 (Fed. Cir. 1993).

1    "A determination of claim indefiniteness is a legal

2    conclusion that is drawn from the court's performance of its duty

3    as the construer of patent claims." LNP Eng'g Plastics, Inc. v.

4    Miller Waste Mills, Inc., 275 F.3d 1347, 1353 (Fed. Cir. 2001)

5    (citing Personalized Media Commc'ns, L.L.C. v. Int'l Trade

6    Comm'n, 161 F.3d 696, 705,(Fed. Cir. 1998)).  Because an issued

7    patent is presumed valid, the burden is on the defendant to prove

8    indefiniteness by clear and convincing evidence. Morton Int'l, 5

9    F.3d at 1470.  In evaluating the sufficiency of the evidence on a

10   motion for summary judgment, the court must take this burden into

11   consideration. See Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d

12   955, 962 (Fed. Cir. 2001).

13              a.   The '253 Patent

14              Defendant argues that the following claim terms in the

15   '253 patent are indefinite: "substantially identically shaped

16   teeth," "better tracking," "progressively and sequentially,"

17   "faster aggressive cutting," and "efficient chip removal."  The

18   court defined "substantially identically shaped," supra, Part

19   II.B.2.  Defendant takes the term "better tracking" out of

20   context.  The full context is that "said teeth contact the bone

21   to be cut thereby to provide better tracking of said surgical saw

22   blade when forming a kerf in the bone." (Gont Noninfringement

23   Decl. Ex. E ("253 patent 6:64-66).)  Plaintiff's expert asserts

24   that one of skill in the art would know how a typical blade

25   tracked in 1991 so that, in its proper context, said person would

26   understand this to be an improvement over the state of the art

27   existing at that time.  (Dornfeld Invalidity Decl. ¶ 78.)

28   Similarly, "faster aggressive cutting," and "efficient chip

removal" are understandable to persons skilled in the art. (Dornfeld Invalidity Decl. ¶ 79.)  Moreover, the '101 patent elaborates on the method whereby the teeth cut progressively and sequentially.  (Gont Noninfringement Decl. Ex. E ('101 patent, 5:66-6:17) (describing a method referred to as "progressive staircasing").)  Defendant fails to carry its burden.  See Eli Lilly & Co, 251 F.3d at 962.  The terms are not indefinite.

b.    The '353 Patent

Defendant argues that the term "substantially identically shaped" utilized in the '353 patent is indefinite. The court defined "substantially identically shaped," supra, Part II.B.2.  The term is not indefinite.

c.    The '101 Patent

Defendant asserts that several of the terms in the '101 patent are invalid.  Aside from the terms which the court has established are not invalid with respect to the '253 patent, those contained within Claims 1-4 and 10 of the '101 patent are the following: "substantially simultaneously," "somewhat linear," "kerf is substantially V-shaped," "alternately and sequentially contacting the kerf."[9]  Terms of approximation are not indefinite.  The terms read within their context would provide someone skilled in the art the scope of the claimed invention. (Dornfeld Invalidity Decl. ¶¶ 80-82.)  Defendant fails to carry its burden.  See Eli Lilly & Co, 251 F.3d at 962.  The terms are not indefinite.

---

[9]    The terms which defendant argues are indefinite with respect to Claim 10 of the '101 patent are the five claims that the court has already determined are not indefinite, supra, Part II.D.4.a, the '253 patent indefiniteness analysis.

33

1   Because the defendant has not shown by clear and

2 convincing evidence that the challenged terms are indefinite, the

3 court will deny defendant's motion for summary judgment of

4 invalidity of the patents-in-suit on the grounds of

5 indefiniteness.  Accordingly, the court will deny defendant's

6 motion for summary judgment of invalidity with respect to the

7 '353 patent, the '253 patent, and Claims 1-4 and 10 of the '101

8 patent.

9        E.   Plaintiff's Motion for Partial Summary Judgment of

10             Infringement of the '353 and '253 Patents

11        To show that a product literally infringes a claim, the

12 plaintiff must demonstrate that each element of the properly

13 constructed claim is found in the accused product.  Cross Med.

14 Prods., Inc. v. Metronic Sofamor Danek, Inc., 424 F.3d 1293, 1310

15 (Fed. Cir. 2005); Southwall Techs., Inc. v. Cardinal IG Co., 54

16 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal

17 infringement, every limitation set forth in a claim must be found

18 in an accused product, exactly.")  Plaintiff moves for partial

19 summary judgement of infringement of Claim 1 of the '353 patent

20 and Claim 2 of '253 patent only with regard to the Stryker Offset

21 blades.[10]

22        Defendant argues that these blades do not infringe both

23 Claim 1 of the '353 patent and Claim 2 of the '253 because these

24 blades lack the following claim limitations: (1) "substantially

25 identically shaped teeth" that are shaped "substantially as right

26

27        [10]   Stryker Offset Blades includes Stryker Part Nos. 4225-
28 070-090, 4225-85-127, 2108-182-001, and 4113-119-090S1.  Stryker
   Parts No. 2108-102S12 and 2108-151S4 do not have offset teeth.

triangles," (2) "each hypotenuse is oriented toward the centrally positioned long axis,"[11] and (3) "the tips are arrayed on a line perpendicular to the centrally positioned long axis."[12]   The court concluded, supra, that the Offset blades do include the first two claim limitations.

The court has previously found in its March 30, 2006, Order held that the tips of the teeth of the offset blade are "'substantially' positioned on a line, or tangent." (March 30, 2006, Order 21.)  Further, "the offset teeth, although not centered on such a line, may still be positioned on that line." (Id.)  For Claim 2 of the '253 patent, the relevant claim limitation is "the tips are configured to be placed substantially on a tangent which is perpendicular to a radial line extending from the center line of the power tool cutting axis that bisects the arc of travel within which the blade travels."  The court concludes that no reasonable jury would fail to find this claim limitation in the Stryker Offset blades.  Accordingly, the court will grant summary judgment for plaintiff on Claim 2 of the '253 patent.

Claim 1 of the '353 patent requires that "the tips are arrayed on a line perpendicular to the centrally positioned long

---

[11]   For Claim 2 of the '253 patent, the exact specification is "each hypotenuse is oriented at least one of towards or away from the centrally positioned long axis."  Defendant's argument does not depend on the variation between the terms and defendant simply refers to its argument regarding the '353 patent, which in turn refers to defendant's own motion for summary judgment of noninfringement.  (Def.'s Opp'n to Pl.'s Mot. for Summ. J. 8-9, 11-12.)

[12]   Defendant does not make this argument for Stryker Parts No. 2108-102S12 and 2108-151S4.

1  axis."  The court has construed "arrayed on a line" to mean

2  "positioned on a single line," and a "tip" to mean  "one or more

3  tips at the distal end of a tooth."  Given these definitions, the

4  court previously held that "the offset teeth, although not

5  centered on such a line, may still be positioned on that line."

6  (March 30, 2006, Order 21.)   Defendant argues that the tips are

7  not arrayed on a line because there is not a line that connects

8  each center point of each tip.  Standing the blade on end and

9  sighting along the teeth at the top, defendant and its experts

10 observe that a single imaginary line cannot be drawn along the

11 horizontal centers of the tips of each of the teeth.

12        In the days when all boys in the seventh grade were

13 required to take a class in wood shop, we all learned on day one

14 the difference between a cross-cut saw, which is used to cut

15 across the grain, and a rip saw, which is used to cut with the

16 grain.  Cross-cut saws have the teeth angled alternatively in

17 opposite directions and rip saws do not.  Because most sawing is

18 done across the grain, we learned that most saws sold and used

19 are cross-cut saws.  The Stryker Offset blade looks like a cross-

20 cut saw.  There is nothing particularly unique about it in that

21 sense.  In fact, the Synvasive blade which was provided to the

22 court also appears to be a cross-cut saw.  Using defendant's

23 interpretation, no cross-cut saw, however straight, could ever be

24 said to have the tips of its teeth positioned along a single

25 line.  That interpretation, however, would not be consistent with

26 the court's construction of the terms.

27        The court has defined a "tip" as "one or more tips at

28 the distal end of a tooth."  The court's definition of a tip is

36

broader than the center of each tip.  The court has carefully
examined the actual blades at issue.  If a straight edge is
placed along the tips of the teeth of the offset blade it will
come in contact with the tip of each and every tooth.
Defendant's experts cannot and do not dispute that fact.  Thus,
consistent with the court's construction of the terms, no
reasonable jury would fail to find that the tips are arrayed on a
line that is perpendicular to the central axis.  The court will
accordingly grant summary judgment for plaintiff on Claim 1 of
the '353 patent.

As for Stryker Parts No. 2108-102S12 and 2108-151S4,
defendant argues that the court cannot conclude that every
element of the claim limitations is met because plaintiff has not
produced an actual physical specimen of these no-longer
manufactured blades, and these blades do not have teeth that were
"substantially identically shaped" and "shaped as right
triangles."  Plaintiff proffers engineering specifications.
(Dornfeld Infringement Decl. Ex. B.)  Based on the engineering
schematic, the court concludes that a jury finding that the
blades were not substantially identically shaped and shaped
substantially as right triangles would be unreasonable.
Accordingly, the court will grant plaintiff's motion for summary
judgment with respect to Stryker Parts No. 2108-102S12 and 2108-
151S4.

III.     Conclusion

IT IS THEREFORE ORDERED that:

(1) defendant's motion for summary judgment of
noninfringement of Claims 1 and 14 of the '253 patent and Claim

37

10 of the '101 patent with respect to the Dual-Cut blades be, and the same hereby is, GRANTED;

(2) defendant's motion for summary judgment of noninfringement of Claims 5, 7, 8, 11, 13, 15, and 17 of the '101 patent be, and the same hereby is, GRANTED;

(3) defendant's motion for summary judgment of noninfringement of Claims 1, 2, 3, 4 of the '101 patent with respect to both Dual-Cut and Offset Blades, and Claim 10 of the '101 patent with respect to the Offset blades, be, and the same hereby is, DENIED;

(4) defendant's motion for summary judgment of noninfringement of the all asserted claims of the '353 patent and '253 patent with respect to the Offset blades be, and the same hereby is, DENIED;

(5) defendant's motion for summary judgment of invalidity of the '353 patent, the '253 patent, and Claims 1-4 and 10 the '101 patent, be, and the same hereby is, DENIED;

(6) plaintiff's motion for partial summary judgment of Claim 1 of the '353 patent and Claim 2 of the '253 patent with respect to the Offset blades and Stryker Parts No. 2108-102S12 and 2108-151S4 be, and the same hereby is, GRANTED.

DATED:  February 16, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE